# EXHIBIT 1

CIRCUIT COURT SUMMONS

NASHVILLE, TENNESSEE

Service ID 307280

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

RYAN AYREST

Plaintiff

vs.

NEUTRON HOLDINGS INC. DBA LIME
992 DAVIDSON DR.
SUITE B
NASHVILLE, TN 37205-1051

Defendant

CIVIL ACTION
DOCKET NO. 22C1460
Method of Service:
 Personal Service

Service ID 307280

### RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20___, I:

_____ served this Summons and Complaint/Petition on _____ in the following manner:

_____ failed to serve this Summons within 90 days after its issuance because _____

_____
Sheriff/Process Server

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

Service ID 307280

| | |
|---|---|
| RYAN AYREST<br><br>**Plaintiff**<br><br>vs.<br><br>NEUTRON HOLDINGS INC. DBA LIME<br>992 DAVIDSON DR.<br>SUITE B<br>NASHVILLE, TN 37205-1051<br><br>**Defendant** | CIVIL ACTION<br>DOCKET NO. 22C1460<br>Method of Service:<br>Personal Service |

Service ID 307280

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 07/20/2022

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: /s/ Cathy Moreland
Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JOSHUA DUSTIN MOORE
20 N. ORANGE AVENUE, 14TH FLOOR
ORLANDO, FL 32801

### NOTICE TO THE DEFENDANT:

Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

 To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **RYAN AYREST,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Docket No:** _____ |
| ) | **JURY DEMAND** |
| **NEUTRON HOLDINGS, INC.** ) | |
| **d/b/a LIME** ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW the Plaintiff, Ryan Ayrest, and files this civil action against the Defendant for damages occurring when the Lime Scooter rented and ridden by Plaintiff came apart – the handlebars detached from the body of the scooter and caused a crash resulting in serious and permanent injuries to Ryan. In further support, Plaintiff alleges and states the following:

## PARTIES & VENUE

1. Plaintiff Ryan Ayrest is and was at all times hereto a citizen and resident of Montgomery County, Tennessee, and is *sui juris*.

2. Defendant, Neutron Holdings, Inc. d/b/a Lime is a Delaware corporation licensed to conduct business in Tennessee (hereinafter "LIME") with its principal place of business at 85 Second Street, Suite 300, San Francisco, CA 94105-3457. LIME registered with the Tennessee Secretary of State to do business in Tennessee and its Registered Agent in Tennessee is CCS Global Solutions, Inc., 992 Davidson Dr., Suite B, Nashville, TN 37205-1051.

3. LIME is engaged in the business of renting scooters for public use throughout the United States and the state of Tennessee. By seeking a nationwide distribution of its products, LIME has purposefully availed itself of doing business in the state of Tennessee and has sufficient

1

minimum contacts to justify being subject to the jurisdiction of a Tennessee court. At all times material hereto, LIME was and is a foreign corporation authorized to do and doing business throughout the state of Tennessee, for which it receives substantial revenue.

4. Venue is proper in Davidson County, Tennessee pursuant to Tenn. Code Ann. §20-4-101(a) and § 20-4-106(a) because Lime's registered agent resides in Davidson County and that is where service of process is to be served. Additionally, this court has jurisdiction over the subject matter of this case and over all parties pursuant to Tenn. Code Ann. § 16-10-101, Tenn. Code Ann. § 20-2-201, Tenn. Code Ann. § 20-2-214, and other legal authorities.

## FACTS

5. Plaintiff, Ryan Ayrest is a full time narcotics investigator and a part-time SWAT leader. In July 2021 he was in Washington, D.C., for a conference with other officers and first responders.

6. On July 27, 2021, Mr Ayrest and others rented several Lime scooters for a tour of the Washington, D.C. area.

7. After stopping at a CVS during the tour, Mr. Ayrest got on a Lime scooter labeled with the following: LBCAT-S, BF3F, IMEI:869307032606849; SN: 181A1AMFS8112300354 and SJ00201811002939 (hereinafter the "Subject Scooter").

8. When he began to ride the Subject Scooter and crossed an area with a slight lip/change in elevation, Mr. Ayrest pulled up on the handlebars on the Subject Scooter, and the handlebars detached from the body of the Scooter.

9. As a result of the loss of its handlebars, the Subject Scooter crashed. Mr. Ayrest suffered several scrapes and bruises in the fall. Furthermore, he had two fractures in his elbow and a tear in his tricep tendon.

10. Mr. Ayrest returned to work as a police officer on light duty, but ultimately missed from September through December 2021. He still struggles with arm strength, stability/shaking, and is unable to properly support a rifle because of his injuries.

## STRICT LIABILITY AGAINST LIME

11. Plaintiff adopts and re-alleges paragraphs 1-10 above and incorporates them as if fully stated herein.

12. The Subject Scooter was owned at all times relevant to this complaint by Defendant LIME. The scooter was made available by LIME for rental for profit to members of the public such as and including Mr. Ayrest.

13. LIME, at all times relevant to this complaint, as the owner of said scooter, had custody and control of the Subject Scooter and was responsible for the inspection and maintenance of the scooter, including ensuring it was in proper working order

14. Defendant LIME owned, serviced, inspected, provided, repaired, and ultimately placed the Subject Scooter into the stream of commerce for users and consumers, including Mr. Ayrest.

15. Defendant LIME placed the Subject Scooter on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. LIME knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly and fully inspect the product for defective and dangerous conditions.

16. On or about July 27, 2021, the date of the subject incident, the Subject Scooter was substantially unchanged from the condition in which it was designed, manufactured, serviced, and supplied by Defendant LIME.

3

17. The Subject Scooter as designed, manufactured, serviced, and supplied by Defendant LIME was defective and unreasonably dangerous to ultimate users, operators, consumers, and/or bystanders because of design, manufacturing, and warning defects that caused the Subject Scooter to suddenly and spontaneously fail by the handlebars becoming detached from the body, including the following:

   a. The Subject Scooter was defective in design leading to catastrophic failure during use;

   b. The Subject Scooter was defectively manufactured which led to catastrophic failure during use;

   c. The Subject Scooter was unreasonably dangerous for its intended use;

   d. The Subject Scooter was defectively designed in that it contained defective materials and components;

   e. The Subject Scooter was defectively manufactured in that it contained defective materials and components;

   f. The Subject Scooter was generally defective in its design and manufacture because it failed to utilize proper materials that would not fail when being used as advertised, marketed, and provided by Defendant LIME;

   g. The Subject Scooter was defective due to Defendant LIME's failure to test, inspect, maintain, and adequately service the Subject Scooter and its component parts to ensure that they were reasonably safe and suitable for their intended purpose and use so as to ensure that they were not unreasonably dangerous under foreseeable circumstances;

   h. The Subject Scooter lacked adequate warnings to consumers and foreseeable users of the unreasonably dangerous and defective condition, despite the fact that the Defendant LIME knew or in the exercise of reasonable care should have known of the unreasonably dangerous and defective condition.

18. The defective and unreasonably dangerous condition of the Subject Scooter described above directly and proximately caused the subject incident and injuries to Plaintiff Ryan Ayrest in that such defects directly and in natural and continuous sequence produced or contributed

substantially to Plaintiff's injuries from the catastrophic failure during use – the handlebars detaching from the body.

19. The defects above directly and proximately caused the subject incident and injuries to Plaintiff Ryan Ayrest in that they directly and in natural and continuous sequence produced or contributed substantially to Plaintiff's injuries and the catastrophic failure during normal operation.

20. For the reasons set forth above, the Subject Scooter was defective and unreasonably dangerous to foreseeable consumers and users, including Plaintiff Ryan Ayrest, who came into contact with the Subject Scooter in an ordinary and foreseeable manner.

21. Based upon information and belief, the Subject Scooter was wrongfully designed, manufactured, inspected, maintained, serviced, distributed, marketed, provided, and rented by Defendant LIME.

22. As a direct and proximate result of the foregoing defective and unreasonably dangerous condition of the Subject Scooter, Plaintiff Ryan Ayrest sustained serious and permanent injury, loss of earnings, and pain and suffering which are likely to continue into the future.

WHEREFORE, Plaintiff Ryan Ayrest demands judgment for any and all damages under Tennessee law against Defendant LIME, and for such other and further relief deemed proper by the Court.

## NEGLIGENCE AGAINST LIME

23. Plaintiff adopts and re-alleges paragraphs 1-10 and incorporates them as if fully stated herein.

24. Defendant LIME is responsible for assembling manufacturing, designing, servicing, inspecting, distributing, marketing, and supplying the Subject Scooter.

25. The Subject Scooter was in a defective and unreasonably dangerous condition when it left Defendant LIME's possession, custody and control and as inspected, tested, serviced, maintained, and provided by LIME.

26. LIME had an obligation to ensure the scooter was functioning properly at the time it permitted Mr. Ayrest to rent it. Fulfillment of this obligation to ensure it was functioning properly included a duty owed to Mr. Ayrest to perform regular and proper inspection, maintenance and servicing.

27. LIME knew or should have known the Subject Scooter was malfunctioning, and that said failure to operate properly constituted a serious safety hazard to those who would use it such as Mr. Ayrest.

28. LIME, as the owner of this scooter, had an affirmative ongoing obligation to not only inspect and service the Subject Scooter, but to do so properly and adequately.

29. LIME, as the owner of the scooter, had a duty, one it breached, to, at the very least, remove the Subject Scooter from circulation upon determining that it was not functioning properly and especially where it knew or should have known that the handlebars were not properly affixed to the body of the scooter – a condition LIME would have discovered with proper, regular, and timely maintenance and inspection.

30. Defendant LIME owned, serviced, inspected, provided, repaired, and ultimately placed the Subject Scooter into the stream of commerce for users and consumers, including Mr. Ayrest.

31. Defendant LIME had a duty to provide adequate warnings, instruction, and information with the Subject Scooter.

32. Defendant LIME had a duty to regularly and adequately inspect, test, service, and repair the Subject Scooter.

33. Defendant LIME breached the above duties, instead providing the Subject Scooter in a defective and unreasonably dangerous condition.

34. The Subject Scooter as designed, manufactured, serviced, and supplied by Defendant LIME was defective and unreasonably dangerous to ultimate users, operators, consumers, and/or bystanders because of design, manufacturing, and warning defects that caused the Subject Scooter to suddenly and spontaneously fail by the handlebars becoming detached from the body, including the following:

   a. The Subject Scooter was defective in design leading to catastrophic failure during use;

   b. The Subject Scooter was defectively manufactured which led to catastrophic failure during use;

   c. The Subject Scooter was unreasonably dangerous for its intended use;

   d. The Subject Scooter was defectively designed in that it contained defective materials and components;

   e. The Subject Scooter was defectively manufactured in that it contained defective materials and components;

   f. The Subject Scooter was generally defective in its design and manufacture because it failed to utilize proper materials that would not fail when being used as advertised, marketed, and provided by Defendant LIME;

   g. The Subject Scooter was defective due to Defendant LIME's failure to test, inspect, maintain, and adequately service the Subject Scooter and its component parts to ensure that they were reasonably safe and suitable for their intended purpose and use so as to ensure that they were not unreasonably dangerous under foreseeable circumstances;

   h. The Subject Scooter lacked adequate warnings to consumers and foreseeable users of the unreasonably dangerous and defective condition, despite the fact that the Defendant LIME knew or in the exercise of reasonable care should have known of the unreasonably dangerous and defective condition.

35. The Subject Scooter lacked adequate warnings to consumers and foreseeable users of the above-described unreasonably dangerous and defective conditions, despite the fact that Defendant LIME knew or in the exercise of reasonable care should have known of the unreasonably dangerous and defective condition.

36. As a direct and proximate result of the foregoing defective and unreasonably dangerous condition of the Subject Scooter, Plaintiff Ryan Ayrest sustained serious and permanent injury, loss of earnings, and pain and suffering which are likely to continue into the future.

WHEREFORE, Plaintiff Ryan Ayrest demands judgment for any and all damages under Tennessee law against Defendant LIME, and for such other and further relief deemed proper by the Court.

37. As a direct and proximate result of the Defendant's negligent acts, Plaintiff Ryan Ayrest is entitled to recover compensatory damages for the following:

    a) Physical pain and suffering both past and future;

    b) Medical Expenses both past and future;

    c) Loss of Enjoyment of life both past and future'

    d) Lost Wages both past and future;

    e) Permanent partial impairment;

    f) Scarring;

    g) Emotional suffering and grief, both past and future;

    h) And all other damages and general relief to which the Plaintiff may be entitled under the law and evidence.

## VI. RELIEF SOUGHT

WHEREFORE, the Plaintiff sues the Defendant and prays:

1. That proper process issue and be served upon the Defendant and they be required to answer the allegations of this Complaint.

2. That Plaintiff Ryan Ayrest be awarded reasonable compensatory damages for bodily injuries, medical expenses, pain and suffering, loss of enjoyment of life, lost earnings and earning capacity, and other related expenses in an amount not to exceed $3,000,000.00.

3. That a jury of six (6) be empanelled to try the issues of this cause.

4. That the Defendants pay all court costs, including discretionary costs of this cause.

5. For such other general and further relief to which the Plaintiff may be entitled.

RESPECTFULLY submitted this 20th day of July, 2022.

/s/ *Joshua D. Moore*
Joshua D. Moore (TN Bar No. #026491)
MORGAN & MORGAN, P.A.
20 N. Orange Avenue, Suite 1600
Orlando, Florida 32801
(407) 420-1414
(407) 648-9592 direct
JoshMoore@forthepeople.com
TCMiner@forthepeople.com
*Attorney for Plaintiff Ryan Ayrest*